UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHAD MERGELMEYER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:14 CV 1494 ACL |
| | ) |
| JAY CASSADY, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Chad Mergelmeyer for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### I. Procedural History

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of Warren County, Missouri. (Respt's Ex. C at 82-83.)

On June 12, 2009, a jury found Petitioner guilty of involuntary manslaughter of the Petitioner's brother, Gary.[1] (Respt's Ex. B at 161.) The court sentenced him as a persistent offender to twenty years' imprisonment. *Id.* at 168.

Petitioner raised two points on direct appeal of his conviction. (Respt's Ex. D.) He first argued that the trial court abused its discretion in sustaining the State's objections to defense counsel's attempted questioning of potential jurors about Petitioner's alleged admissions to driving the vehicle involved in the accident which resulted in Gary's death. *Id.* He next

---

[1] For clarity, the undersigned will identify Chad and Gary Merglemeyer by their first names as the Petitioner (Chad) and the victim (Gary) are twin brothers with the same last name. Chad Merglemeyer will most frequently be referred to as Petitioner.

argued that the trial court erred in overruling his objection and in admitting into evidence his statements made to Sgt. Chris Patton before he was informed of his *Miranda* rights. *Id.* On October 12, 2010, the Missouri Court of Appeals affirmed the judgment of the trial court. (Respt's Ex. F.)

Petitioner filed a *pro se* motion for post-conviction relief under Rule 29.15 on January 26, 2011. (Respt's Ex. G at 4-14.) After appointment of counsel, Petitioner filed an amended post-conviction relief motion under Rule 29.15 and request for an evidentiary hearing, in which he raised the following claims: (1) he was denied due process because the prosecutor engaged in misconduct when he failed to disclose the Victim Impact Statement of Petitioner and Gary's mother, Donna Mergelmeyer, and used the statement against him at trial; (2) he was denied due process because the prosecutor engaged in misconduct when he asked Mrs. Mergelmeyer questions about her family's lack of support for Petitioner despite sustained objections; (3) he was denied effective assistance of counsel because trial counsel failed to object when the State presented evidence of Mrs. Mergelmeyer's filing and settlement of a wrongful death action; and (4) he was denied due process of law and effective assistance of counsel because Petitioner was improperly prevented from cross-examining Mrs. Mergelmeyer about who had told her Petitioner was driving. (Respt's Ex. G at 15-35.) On November 30, 2012, the motion court denied Petitioner's amended motion and request for an evidentiary hearing. *Id.* at 36-44.

Petitioner raised the following points on appeal from the denial of post-conviction relief: (1) he was denied due process when the prosecution failed to disclose Mrs. Mergelmeyer's victim impact statement and used the statement against him at trial; (2) he was denied effective assistance of counsel because trial counsel failed to object to evidence of Mrs. Mergelmeyer's wrongful death settlement; and (3) he was denied effective assistance of counsel because

appellate counsel failed to assert on direct appeal that the trial court erred in not allowing him to cross-examine Mrs. Mergelmeyer about who had told her that Petitioner was driving. (Respt's Ex. H.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. J)

Petitioner filed the instant habeas action on January 30, 2013, raising the following grounds for relief: (1) the prosecutor engaged in misconduct when he failed to disclose Mrs. Mergelmeyer's Victim Impact Statement and used such statement against Petitioner at trial, constituting a discovery and *Brady* violation; (2) the prosecutor engaged in misconduct when he asked Mrs. Mergelmeyer about her family's lack of support for Petitioner and her speculation about whether Petitioner was driving despite sustained objections; (3) trial counsel was ineffective in failing to object when the State presented evidence of Mrs. Mergelmeyer's filing and settlement of a wrongful death action; and (4) the trial court erred in not allowing him to ask Mrs. Mergelmeyer on re-cross about who told her that Petitioner was driving. He also argues in Ground Four that trial counsel was ineffective for not making an offer of proof and that appellate counsel was ineffective for not challenging the limitations on the re-cross examination on appeal. (Doc. 1.)

On October 20, 2014, Respondent filed a Response to Order to Show Cause, in which he argues that Grounds One, Two, and parts of Ground Four are procedurally defaulted; the Petition is untimely; and all of Petitioner's claims fail on their merits. (Doc. 8.)

## II. Background Facts

The Court's summary of the facts below is taken from the decision of the Missouri Court of Appeals affirming the denial of post-conviction relief. (Respt's Ex. J at 2-3.)

On April 16, 2008, Petitioner and his brother, Gary Mergelmeyer ("Gary"), were

involved in a one-vehicle accident resulting in Gary's death. Prior to being taken to the hospital, Petitioner was placed under arrest for drunk driving. Petitioner was subsequently charged with one count of first-degree involuntary manslaughter. The State of Missouri alleged that Petitioner was under the influence of alcohol when he operated the motor vehicle, and through criminal negligence, caused the death of his passenger, Gary.

Petitioner's case proceeded to a jury trial on June 11 and 12, 2009. At trial, Petitioner claimed he was not the driver of the truck involved in the accident, but that his brother Gary was the driver. The State presented substantial evidence that Petitioner was the driver, including the following: evidence that Gary did not have a driver's license and those who knew him had not seem him drive in years; an accident reconstructionist who testified that the circumstances of the crash indicated Petitioner was the driver; and a Missouri State Highway Patrol trooper who testified that Petitioner admitted he was driving the truck during an interview with the trooper the night of the accident.

The State also presented the testimony of Petitioner and Gary's mother, Donna Mergelmeyer. Mrs. Mergelmeyer testified that following Gary's death, she had been in contact with the prosecutor's victim advocate and had filled out a victim impact statement. She further testified that she accepted a $25,000 wrongful death settlement from Petitioner's insurance company because it was her understanding that Petitioner was driving the night of the accident.

The jury found Petitioner guilty of first-degree involuntary manslaughter.

### III.  Timeliness

Respondent argues that the instant Petition is untimely. Petitioner has not responded to Respondent's argument regarding the timeliness of the Petition.

Pursuant to 28 U.S.C. § 2244(d), Petitioner had one year from the date his judgment of conviction became final within which to file a petition for writ of habeas corpus in federal court. Where, as here, a Missouri petitioner does not seek transfer to the Missouri Supreme Court after direct appeal, his judgment becomes final upon expiration of the time within which to seek such discretionary review, that is, fifteen days after the court of appeals issues its opinion. *Gonzalez v. Thaler,* 565 U.S. 134 (2012); Mo. S.Ct. R. 83.02. Thus, Petitioner's judgment of conviction became final on October 27, 2010, fifteen days after the Missouri Court of Appeals affirmed his conviction on direct appeal.

In examining whether the instant Petition was timely filed, it is important to note that the one-year limitations period was tolled during the pendency of Petitioner's post-conviction proceedings. 28 U.S.C. § 2244(d)(2). Petitioner filed his pro se motion for post-conviction relief on January 26, 2011. (Respt's Ex. G at p.) Because the statute ran ninety-one days from the conclusion of direct review to the filing of the post-conviction motion, Petitioner had two hundred seventy-five days of "untolled" time remaining to file his Petition. The statute began to run again on October 23, 2013, the date of the issuance of the mandate in Petitioner's post-conviction relief proceedings. *See Payne v. Kemna,* 441 F.3d 570, 572 (8th Cir. 2006). Petitioner's deadline to file the instant petition was July 25, 2014, two-hundred-seventy-five days after the mandate was issued.

Thus, the Petition mailed on August 11, 2014—seventeen days after the deadline—was untimely filed.

## IV. Procedural Default

Respondent argues that Grounds One, Two, and parts of Ground Four are procedurally defaulted, because Petitioner did not properly raise them in the State court proceedings.

To avoid defaulting on a claim, a federal habeas petitioner must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking a federal writ of habeas corpus. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

Petitioner did not raise the claims that the State asked improper questions to Mrs. Mergelmeyer (Ground Two) or the claim that the trial court erred in connection with the re-cross of Mrs. Mergelmeyer (Ground Four) in his appeal from the denial of post-conviction relief. When appellate review of a post-conviction motion is available, failure to include a claim made to the motion court operates as a procedural bar to consideration of such a claim by the federal courts. *Flieger v. Delo,* 16 F.3d 878, 885 (8th Cir. 1994); *Boyd v. Groose,* 4 F.3d 669, 671 (8th Cir. 1993). As a result, these claims are procedurally defaulted.

Petitioner raised the claim contained in Ground One regarding the alleged discovery violation in the post-conviction proceedings, but did not raise it on direct appeal. The Missouri Court of Appeals found that the claim was not cognizable on post-conviction review because Petitioner knew of the alleged discovery violation during trial and he should have raised the claim

in his direct appeal. (Respt's Ex. J at 5.) "Federal courts may not grant habeas relief based on procedurally defaulted claims if the state court's reason for finding default rests on adequate and independent state grounds." *Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009) (citation omitted). The Missouri Court of Appeals' rejection of Petitioner's post-conviction claim of a discovery and *Brady* violation was based solely on a state procedural rule, specifically, the requirement that claims of *Brady* violations must be raised on direct appeal. *See Ivory v. State*, 422 S.W.3d 503, 507 (Mo. Ct. App. 2014) (citation omitted) ("Generally, claims of prosecutorial misconduct are to be brought up on direct appeal and are not cognizable in a Rule 29.15 proceeding.").

Claims that have not been fairly presented to the state courts are procedurally defaulted and may not give rise to federal habeas relief unless the petitioner establishes "cause for not presenting the claim on post-conviction appeal and prejudice from the failure, or a fundamental miscarriage of justice-meaning that he is actually innocent." *Storey v. Roper,* 603 F.3d 507, 523-24 (8th Cir. 2010), citing *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

Here, Petitioner does not allege cause and prejudice nor does he make a showing of actual innocence. Accordingly, Petitioner's defaulted grounds for relief cannot be resurrected from procedural default.

## V. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

## VI. Petitioner's Claims

The undersigned has found that the Petition was untimely filed, and that Grounds One and Two and part of Ground Four are procedurally defaulted. Although Petitioner's claims are subject to dismissal based on these findings, the Court will briefly address the merits of Petitioner's claims.

1. **Ground One**

In Ground One, Petitioner argues that the prosecutor committed misconduct in violation of state discovery rules and *Brady* by not disclosing a Victim Impact Statement provided to the prosecutor by Mrs. Mergelmeyer and then using the statement against Petitioner at trial.

As previously noted, the Missouri Court of Appeals found that this claim was not cognizable because Petitioner knew of the alleged discovery violation during trial and he should have raised this claim in his direct appeal. (Respt's Ex. J at 5.)

The following testimony was elicited during the State's direct examination of Mrs. Mergelmeyer:

> [Prosecutor]: All right. And at one point I believe you even filled out what's called a victim impact statement; is that correct?
>
> [Mrs. Mergelmeyer]: I did.
>
> [Prosecutor]: Okay. Do you think Chad is an alcoholic?
>
> [Defense counsel]: Objection to relevancy, Judge.
>
> \*\*\*
>
> (Counsel approached the bench and the following proceedings were had):
>
> [Defense counsel]: Judge, as I say, he's cross-examining his own witness and I'm trying to give him a little leeway in that. He now intends to question her about a victim impact statement on his own witness and we've never been provided a copy of that. I have no idea what she said. He's also proposing to have her testify about drugs and alcohol addiction, bad acts that were clearly against the motion in limine to put on such a thing. I just don't see anything but a land mine if we continue in this direction.
>
> [Prosecutor]: Your Honor, where I'm going to is I believe this is all laying foundation, the ground that she was told by her son that he was in fact the driver of this particular vehicle.
>
> \*\*\*
>
> THE COURT: Well, you can ask if she was told he was driving and leave it at that.

(Respt's Ex. B at 131.)

In the Victim Impact Statement, Mrs. Mergelmeyer makes the following statements:

> We feel this wasn't a crime, we feel it was an accident…We feel it would be in our best interest that Chad be sent to a drug & alcohol treatment program that he has to complete before he comes home…Because we feel that this was an accident we would not like to see Chad charged with anything more than [a] parole violation.

(Respt's Ex. K.)

Petitioner's claim that the prosecutor's use of Mrs. Mergelmeyer's statement against him fails because *Brady* only requires the prosecutor to turn over *exculpatory* evidence prior to trial. *See United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996) ("*Brady* does not require the Government to disclose inculpatory evidence."). "To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching, (2) the state suppressed the evidence, either willfully or inadvertently, and (3) prejudice ensued." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011).

Petitioner claims that the statement was exculpatory because it "apparently includes an indication that Petitioner never made any admission to his mother during their numerous conversations." (Doc. 1 at 6.) The Victim Impact Statement, however, provides no information regarding whether Petitioner made an admission to his mother. Because Mrs. Mergelmeyer's statement was not exculpatory, Petitioner fails to establish the elements of a *Brady* violation.

Petitioner's claim that the prosecutor committed misconduct by violating state discovery rules also fails. Federal habeas relief is not concerned with violation of state discovery rules. *See Johnston v. Bowersox,* 119 F. Supp.2d 971, 981 (E.D. Mo. 2000) (internal citations omitted). Instead, as a general rule, "[p]rosecutorial misconduct does not warrant federal habeas relief

unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process." *Roberts v. Bowersox,* 137 F.3d 1062, 1066 (8th Cir. 1998). Notably, the prosecutor never presented the contents of Mrs. Mergelmeyer's Victim Impact Statement to the jury. The prosecutor's mere references to Mrs. Mergelmeyer's Victim Impact Statement were not so unfair as to amount to a denial of due process.

Thus, Ground One will be denied.

**2.     Ground Two**

In Ground Two, Petitioner argues that the prosecutor engaged in misconduct when he asked Mrs. Mergelmeyer about her family's lack of support for Petitioner and her speculation about whether Petitioner was driving, despite sustained objections.

Early during direct examination, Mrs. Mergelmeyer testified, presumably for the first time, that she had seen Gary driving Petitioner's vehicle just weeks before the wreck. (Respt's Ex. B at 129.) During a series of questions regarding why Mrs. Mergelmeyer did not reveal this information sooner, the prosecutor asked, "you didn't really think that Gary was the driver." *Id.* at 130. The trial court sustained defense counsel's objection to that question. *Id.*

The prosecutor then began asking Mrs. Mergelmeyer about the Victim Impact Statement. *Id.* Specifically, the prosecutor noted that she used the term "we" in her statement, and asked Mrs. Mergelmeyer to whom she was referring. *Id.* at 131. Mrs. Mergelmeyer testified that the "we" referred to herself, one of her daughters, and that daughter's spouse. *Id.* The prosecutor then attempted to ask if Petitioner's other siblings "are not supportive" of Petitioner. *Id.* Defense counsel objected on the grounds of relevancy, and the court sustained the objection. *Id.* The prosecutor attempted to ask the same question a second time, and the objection was again sustained. *Id.* at 132,

The prosecutor then asked Mrs. Mergelmeyer whether Petitioner ever admitted to Mrs.

Mergelmeyer that he was the driver. *Id.* Mrs. Mergelmeyer responded that Petitioner never "c[a]me out and said that he was the driver." *Id.* The prosecutor responded by asking whether Petitioner used "words that led you to believe he was the driver." *Id.* The court sustained defense counsel's objection to this question on the grounds that it called for speculation. *Id.* When Mrs. Mergelmeyer testified that she could not remember "the exact words" Petitioner used, the prosecutor asked her whether she had drawn the conclusion based on their conversations that he was the driver. *Id.* The court again sustained defense counsel's objection that the question called for speculation. *Id.*

In each of the cited instances of alleged improper questioning by the prosecutor, the trial court sustained defense counsel's objections, thereby granting Petitioner the relief he requested. Every improper or erroneous statement by a prosecutor does not necessarily present a constitutional violation. *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974). The relevant inquiry on habeas review is whether the comments so infected the trial with unfairness as to make the conviction and/or sentencing a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). Assuming the prosecutor's questioning of Mrs. Mergelmeyer was improper, Petitioner cannot demonstrate that any of the questions were so inflammatory as to deprive him of due process.

Thus, Ground Two will be denied.

**3.  Ground Three**

In his third ground for relief, Petitioner argues that trial counsel was ineffective in failing to object when the State presented evidence of Mrs. Mergelmeyer's filing and settlement of a wrongful death action.

Prior to trial, defense counsel filed a motion in limine seeking to exclude any evidence related to Mrs. Mergelmeyer's settlement of a wrongful death case for damages arising from

Gary's death. (Respt's Ex. C at 43-44.) The court granted the motion as to the result of the civil case, but denied the motion as to the State's ability to use Mrs. Mergelmeyer's testimony from the settlement hearing as a prior inconsistent statement if Mrs. Mergelmeyer testified differently in Petitioner's trial. (Respt's Ex. B at 13-14.)

During direct examination at trial, Mrs. Mergelmeyer denied that Petitioner admitted to being the driver. *Id.* at 132. The prosecutor then asked Mrs. Mergelmeyer whether she testified in connection with the wrongful death action that Petitioner was the driver. *Id.* The following exchange occurred:

> [Prosecutor]: And as part of that did you testify at that hearing that it was your understanding that Chad was operating the motor vehicle that caused the death of your son Gary?
>
> [Mrs. Mergelmeyer]: Yes, I did.
>
> [Prosecutor]: And you accepted twenty-five thousand dollars for that?
>
> [Mrs. Mergelmeyer]: Yes, I did.
>
> [Prosecutor]: And now you're telling the jury today you don't remember whether your son Chad told you he was driving or not. Is that what you're stating today?
>
> [Mrs. Mergelmeyer]: I went by the police report and all the other reports that was on there that—

*Id.* The prosecutor noted that Mrs. Mergelmeyer's testimony at the settlement hearing pre-dated the disclosure of the police reports to Petitioner. *Id.* at 132. Mrs. Mergelmeyer also acknowledged that she had never informed the insurance company that she did not know that Petitioner was driving. *Id.* at 133.

Defense counsel did not object to this line of questioning, but elicited on cross-examination of Mrs. Mergelmeyer that she never testified at the hearing that Petitioner was driving, but only stated that was her "understanding" based on what she was told by the insurance company. *Id.* at 133. Mrs. Mergelmeyer further testified that the insurance company called her

and offered her $25,000 if she agreed to settle, and that she never hired an attorney or pursued a claim. *Id.*

During closing argument, the prosecutor argued that, because Mrs. Mergelmeyer collected a $25,000 settlement, she "knew" Petitioner was driving the night of the accident. *Id.* at 154.

Petitioner raised the claim that trial counsel was ineffective in failing to object to the evidence regarding the wrongful death settlement in the post-conviction proceedings. The Missouri Court of Appeals held as follows:

> Our review of the record shows that there is no reasonable probability the outcome of Mergelmeyer's trial would have been different had evidence of the wrongful death settlement been excluded. *See Tisius v. State*, 183 S.W.3d at 212. Donna's testimony that she accepted a settlement from Mergelmeyer's insurance company and the State's argument that acceptance of the settlement indicated Donna's knowledge that Mergelmeyer was driving is cumulative to the State's other substantial evidence that Mergelmeyer was driving the night of the accident. The State presented evidence that Gary did not have a driver's license and those who knew him had not seen him drive in years. The State also presented an accident reconstructionist who testified that the circumstances of the crash indicated Mergelmeyer was the driver. Additionally, a Missouri State Highway Patrol trooper testified that Mergelmeyer admitted to driving the truck during an interview on the night of the accident. Because the State presented other substantial evidence of Mergelmeyer's guilt, trial counsel's failure to object to the evidence of the wrongful death settlement agreement was not outcome determinative and did not prejudice him. Accordingly, the motion court did not clearly err in denying Mergelmeyer an evidentiary hearing on his claim of ineffective assistance of counsel.

(Respt's Ex. J at 8.)

In order to state a claim of ineffective assistance of trial counsel, a petitioner must meet the *Strickland* standard: Petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. To establish prejudice, a petitioner must show

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

The Missouri Court of Appeals reasonably applied *Strickland* and found that Petitioner was unable to demonstrate prejudice. The record supports the finding that there is no reasonable probability the outcome of the trial would have been different had the evidence of the wrongful death settlement been excluded. Given the significant other evidence presented that Petitioner was the driver, Mrs. Mergelmeyer's testimony was merely cumulative. The determination of the State court does not contravene or unreasonably apply clearly established federal law. Thus, Ground Three is denied.

**4.    Ground Four**

In his final ground for relief, Petitioner argues that the trial court erred in not allowing him to ask Mrs. Mergelmeyer on re-cross about who told her that Petitioner was driving. He also argues in Ground Four that trial counsel was ineffective for not making an offer of proof and that appellate counsel was ineffective for not challenging the limitations on the re-cross examination on appeal. Petitioner contends that Mrs. Mergelmeyer would have testified that officers came to her home the night of the accident and told her that Gary had died in an accident in which Petitioner was driving.

On re-direct, the prosecutor asked Mrs. Mergelmeyer how the insurance company found out about the accident, and Mrs. Mergelmeyer indicated that she may have been the one to notify the insurance company. (Respt's Ex. B at 134-35.) The prosecutor subsequently asked Mrs.

Mergelmeyer if Petitioner gave her the information she provided to the insurance company. *Id.* at 135. Mrs. Mergelmeyer testified that she did not remember if she talked with Petitioner about the accident prior to calling the insurance company. *Id.*

On re-cross, defense counsel attempted to ask Mrs. Mergelmeyer what happened when two police officers came to her house on the night of the accident to tell her that Gary had died. *Id.* The trial court sustained the prosecutor's objection to this line of questioning as beyond the scope of re-direct. *Id.* Defense counsel did not make an offer of proof on his proposed questions, but argued in the motion for new trial that the trial court erred in sustaining the objection. *Id.* Appellate counsel did not include a claim related to this issue in Petitioner's direct appeal.

Petitioner raised the claims that the trial court erred in sustaining the prosecutor's objection, and that trial and appellate counsel were ineffective related to this issue in the post-conviction proceedings. The motion court held that the trial court did not err in sustaining the State's objections because the questions asked exceeded the scope of the State's redirect examination, and that neither trial counsel nor appellate counsel were ineffective in failing to raise meritless claims. (Respt's Ex. G at 43-44.) The Missouri Court of Appeals noted that this claim of error was not preserved because trial counsel made no offer of proof. (Respt's Ex. J at 9.) The court found that appellate counsel was not ineffective in failing to raise an unpreserved claim because the alleged trial court error was not so substantial as to amount to a manifest injustice or a miscarriage of justice. *Id.* at 10. The court stated:

> Mergelmeyer has not shown, nor does the record indicate, that the trial court's rulings sustaining the State's objections constituted a manifest injustice or miscarriage of justice. Even if trial counsel had been allowed to cross-examine Donna regarding her knowledge of who was driving the vehicle, there is no reasonable probability that such testimony would have changed the outcome of the trial. Even without Donna's testimony, the jury had ample evidence to support its verdict, including: evidence that Gary did not have a driver's license; testimony

      from an accident reconstructionist that the circumstances of the crash indicated
      Mergelmeyer was the driver; and evidence that Mergelmeyer admitted he was the
      driver during an interview with a Missouri State Highway Patrol trooper. Given
      the substantial evidence of Mergelmeyer's guilt, it is improbable we would have
      found plain error in the trial court's ruling sustaining the State's objections to
      Mergelmeyer's cross-examination of Donna.

(Respt's Ex. J at 10.)

Petitioner's claim that the trial court erred in sustaining the State's objection lacks merit, as it is "well settled that evidentiary issues in State court proceedings are matters of State law and are not reviewable in federal habeas proceedings." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997). The motion court held that the questions asked exceeded the scope of the State's redirect examination. This decision is entitled to deference, and is not contrary to clearly established federal law.

As to Petitioner's ineffective assistance of counsel claims, the State courts properly applied *Strickland* and found that Petitioner was unable to demonstrate prejudice resulting from trial or appellate counsel's failure to properly raise this issue. Even assuming trial counsel had made an offer of proof resulting in the admission of testimony from Mrs. Mergelmeyer regarding the police officer's statement, this would not have affected the outcome of the trial. As previously discussed, the State presented multiple sources of evidence showing that Petitioner was the driver of the vehicle. In light of the substantial evidence of Petitioner's guilt, Petitioner cannot show that the result of the trial would have been different had Mrs. Mergelmeyer been permitted to testify that officers told her that Petitioner was the driver. Similarly, appellate counsel was not ineffective for failing to raise a meritless claim. Thus, Ground Four is denied.

## VI.    <u>Certificate of Appealability</u>

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v.*

*Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Mergelmeyer has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of September, 2017.